May it please the court, my name is Jonathan Tico and along with my co-counsel Felix Luna, who is with me at council table, I represent the plaintiffs in this matter. The briefs to the court present a competing analysis trying to draw the distinctions between liquidated damages and alternative performance, but the functional issue here behind those labels is whether Clearwire's early termination fees or ETFs should or should not be subject to the traditional equitable analysis to determine whether or not they are unlawful penalties. And by arguing that the ETFs are alternative performance, Clearwire is seeking to insulate them from that analysis. Under that equitable test, a stipulated sum of money in a contract that allows a performing party to exit the contract by paying that sum of money can be an unlawful penalty if it is not a reasonable forecast of actual damages, if the actual damages are not unascertainable, or if the sum is intended to have an interim effect. Each of those three parts raise factual issues that were not developed or addressed or resolved in the court below. Under the Supreme Court of Washington's decision in Chandler, which appears at 267 P. 2nd. 907, that court addressed the difference between liquidated damages and alternative performance and said that those labels should not be applied in a vacuum and that the functional question of could be characterized as one permitting alternative means of performance. And it quoted with approval from the Williston Treatise on Contracts, which talked about three possible buckets that a contract like this could fall into. It could be, one, a contract contemplating a single definite performance with liquidated damages, lawful liquidated damages as an alternative. Or third, it could be a true alternatives contract. And the court went on to say that even if the contract appears by its terms to fall into that third class, meaning an alternatives, a true alternatives contract, that that does not necessarily prove that it does not belong to the first category, meaning a contract with an alternative. Here, if we're to give credit to some of the facts, Clearwire was performing miserably so that people wanted to get out of their contracts. And In that situation, if they just simply refused to pay anything more, then Clearwire would have to sue them in order to enforce anything. And that did, in fact, occur with a number of the names plain and strong. Uh-huh. That's true. And that is an important point because in this case, unlike, for example, in the Hutchinson case, which a different panel of this to terminate the contract when Clearwire thought that the customer had breached and to impose the early termination fee on the customer in that circumstance. And in fact, I believe at least two of the named plaintiffs, including Mr. Minnick, the lead named plaintiff, in fact, found themselves in that situation. They canceled the service, they refused to make further payments, and Clearwire instituted collection proceedings against them for the ETFs. And the rule that Clearwire is arguing for here, I think, I would hope the court would ask itself whether that rule would make sense in other contexts. Because under the logic of Clearwire's argument, they would be allowed to charge an ETF significantly greater than the one that is actually in this contract. They could charge an ETF of $500 or $1,000 or $10,000, and they would still be able to stand up and argue in court, well, at any point in time during the course of that contract, the customer is faced with a rational choice. Do I continue to make monthly payments or do I pay the ETF? Now, the choice will always be, if the ETF gets too high, the choice will always be to continue to make the payments. But it is still a free choice if you sort of just accept that this is a normal contract that allows for that type of free choice. Well, but it's said that even alternative contracts, they have to have some rational connection to each other. Doesn't it say that? There is language in the case law. There's not a rational connection, then. There is language in the case law in both Washington and Delaware, and I believe it's quoting from another one of the treatises, I believe the Corbin Treatise, that says for a contract to be an alternative performance contract as opposed to one involving liquidated damages, the two performances have to have a reasonable relationship to each other. Now, that doesn't answer the question here, but it might answer the question, the horrible you're parading out to us. Well. You can either keep paying your fee or you can pay $10 million. That ain't going to work, is it? It would certainly fail the test for whether or not it was an unlawful penalty. And I think my point is simply that that is a factual test, and that test has not been applied yet in this case. But you said it wouldn't fail the alternative contract test, and I think it probably would. Would it not? Well, I guess it depends what that test is. I mean, Clearwire's basic argument here and the argument that the district court seemed to accept was simply that the test is free choice. Now, how you define free choice, I guess you could define it in a way to say, well, the choice is not really free if it doesn't make economic sense. And here in fact, it was a smaller amount. Well, it depended at what point in time the customer decided to terminate. In the early months of the contract, it would make economic sense to pay the ETF. In the later months of the contract, it wouldn't make economic sense. And at that point, though, early in the contract, you think, okay, it may make sense to pay the ETF rather than to continue to make these payments. It is still within the customer's control to decide which of those two things they wish to do, as opposed to simply going into breach and saying, I'm not making any payments, I'm just stopping. It's not a Clearwire's option at that point, right? It's still at the customer's option. That's always true because the customer can continue making the monthly payments. And so there looks like there's – with the schedule that Clearwire has got, they don't have $1,000 or $5,000 or $10,000 because there wouldn't be any sort of break-even point in over a two-year contract. But here, there does appear to be sort of a break-even point, some point at which an economically rational customer says, I'm indifferent as to whether I pay the $220 fee or as to whether I make the remaining payments here. But if this were two months from now, it clearly would be in my economic interest to pay the remaining monthly fees. And if I had done this two months earlier, clearly I should have just paid the ETF and be done with it. That's correct, Your Honor. And I guess my response to that would be, even if you have a contract where there is that break-even point, and that would be true in any contract where the ETF is less than the sum of all the monthly payments. So if you have 24 months and it's $100 a month, if the ETF is less than $2,400, there's always going to be that break-even point, right? But that ETF could still fail the test for unlawful penalties because it still might not be a reasonable estimate of the defendant's damages, of the company's damages, because the company's damages are not necessarily the sum of the remaining monthly payments because there are cost savings on that side as well. And that requires a factual trial, yes? That's a factual inquiry. It might not require a trial. Not whether they are, but whether you could estimate it there. Whether it's a reasonable forecast. It could also fail the test for whether the damages are unassertainable, because if the damages are not unassertainable, then under Washington law, liquidated damages are considered a penalty. And the third part of the test is, is the stipulated sum intended to have an interim effect? And clearly, I mean, again, we don't have a developed factual record here. But I think Congress... Counsel, you gave us those three things up front and I actually wrote them down. Are those disjunctive or conjunctive? I believe they're disjunctive in the case law, Your Honor. So that any one of those would be sufficient to find the fee unlawful? It would be sufficient. Now, this is an equitable test. It's not a bright line rule. It is an equitable test that depends on the facts and circumstances of the case. And the cases make that absolutely clear. So maybe interim would be sufficient and maybe it wouldn't. So it's not... I take it you're saying it's neither disjunctive nor conjunctive. It's just here are a bunch of factors to look at? We don't have to prove all three to win if we were to get to that point in the case. But here are a bunch of factors to look at. Absolutely. Is that what it is? Yes. So you could prove one of them, but the other two are just way against you and the court may not give you a win because it's equitable. That's how I interpret the cases, Your Honor. All right. So I think the court needs to look at something other than just the issue of free choice, which is the sole factor that the court looked at. And we propose a test that looks at at least two other factors that we believe are in the case law. One is, is the ETF truly an alternative performance in the sense that by paying the ETF, the customer receives some return performance from ClearWire? And here the answer to that question is clearly no. The customer does not, under this contract, have two alternative ways to get the ClearWire service. They can't go to ClearWire and say, here's the ETF, but I'd like you to continue giving me the service until the expiration of my term. So in that sense, there are not two alternative paths. The other test relates to remedies. If this is a true alternative performance contract, then when the customer breaches and ClearWire sues for the breach, ClearWire would not be entitled necessarily to recover the ETF because under what we believe is very well-established law, and it's been the law in the United States for more than 150 years, in a true alternative performance contract where the performing party has not made an election, the measure of damages is the amount of damages that is the least expensive to the breaching party. And in some cases that may be the ETF, but it's not always. But clearly the terms of this contract presume that the customer will be liable for the amount of the ETF, regardless of how it relates to the sum of the remaining monthly payments. And that demonstrates that it is, in fact, liquidated damages and not alternative performance. I'd like to just briefly address the Hutchinson and Schneider decisions, which came down after the briefing and this case was closed. Those are both unpublished decisions of a different panel of this court. Both had dissents. Both were decided under California law. We're dealing here with Washington law primarily. And the panels in the Hutchinson and Schneider cases focused on a fact that we simply don't have in this case, which is that they focused on the fact that the customers in those situations were given a choice at the outset between a month-to-month contract and a term contract, and that they received a discount for entering into the term contract, and therefore were considered to have made a choice of the term contract with the ETFs at the inception. Did those two cases come to opposite conclusions? No. They both affirmed in one case dismissal and in another case summary judgment in favor of the defendants. And why do we need to consider them? I realize that those cases can be cited when we need to clear up some law because problems are going on at the non-pub level. But are we supposed to be relying on those as authority or do you just say they're a good argument? Absolutely not. I mean, they're not cases that are good for us, but despite the non-pub rule it appears to litigants often that there is a momentum created by unpublished decisions that we need to push back against a little bit. And my point is simply that our case is distinguishable because here, although Clearwire says in its brief that their customers had a choice of a month-to-month contract, and there is a reference to month-to-month contracts in the service agreement, there is no evidence in the record that in fact the plaintiffs were given that choice at the outset. And so I just wanted to point that out. Counsel, you have less than a minute. Did you want to reserve your time? Okay. I better reserve the rest of my time. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, I'm Steve Rumage, and I'm appearing this morning on behalf of the defendant Clearwire. And, Your Honors, what I want to do is start off with an explanation, an affirmative explanation as to why we think these ETS qualify as alternative performance provisions. Then I want to talk about the three points that Mr. Tico made in rebuttal to that position. But what I'd like to start off with, Your Honors, is just a clarification on two uncontroversial facts that are in this record. And the first is that all 12 of these plaintiffs signed up for two-year contracts, which had, depending upon their monthly payments, obligations in total of either $720 over the course of the contract or $888 over the course of the contract. And there is no legal principle, and the plaintiffs have never alleged that there is a legal principle, that says that a contract has to have an early out, has to give you a right to get out early at all. But these contracts did. These contracts had provisions that said for a maximum of $200, $210 actually, declining over the course of the contract, you could get out of those obligations. What's the significance of that? The significance of that, Your Honor, is that from the inception of the contract until roughly three months or less on the contract, if I decide I made an improvident decision or I decide I want to move out of Clearwater Service Area, I can pay an early out of $200 or $180, whatever it is, and avoid the balance of the contractual obligation. Well, I don't see where that advances the problem. You know, the basic problem, I think, in all these areas, if you believe Holmes, if you believe him anyway, every contract in the world is an alternative performance contract, right? You always have an option. The performance you always agree to, whenever it says Holmes, every time you agree to a contract, what you're really agreeing to is, I will either do X or I will pay damages. Every contract in the world is, in that theory, alternate performance. For data damages, say, okay, we're going to figure out fairly what the damage is going to be because we can't tell for sure whether the damage is going to be $200 or $600 or $20. We're going to guess $200, and that's our liquidated damage provision. Okay? Now, everything you've said so far would fit liquidated damages. Actually not, Your Honor, not under Washington law, and here's why. And I refer specifically to the Bentley case, and I thought it was interesting that what Mr. Tico did is refer to Chandler, a case from 1942. Bentley is a case within the last couple of decades that addresses exactly this issue, Your Honor, and it has a contract in that case involving a teacher. Teacher goes on sabbatical. Obligation of the teacher is to come back and teach two years. If teacher does not do that. Or pay us money. Or pay us money. Now, what Your Honor just said would suggest, well, that has to be analyzed under the rubric of liquidated damages, but that's not what the Washington court said. What the Washington court said was not in terms of a three-part test, but I glean out of Bentley essentially three factors. One, the chief factor is free choice. And I know Mr. Tico said bad factor, but that's what the Washington court says. I always have free choice, right? Always have free choice. Free contract in the world. Now, here's the other part of that, though, Your Honor, where we part ways with Holmes and I guess go more towards Lon Fuller, who had a different view on these very issues. That's true. And we part ways because what that means when you talk about choice is rational choice. And if you look at this case law as a whole, you look at the California cases, you look at the Washington cases, you look at the treatises and Williston, Corbin, McCormick on damages all talk about these. And they talk in terms of a rational choice where it would be economically beneficial or advantageous in some circumstances to exercise the choice. And if there are circumstances under which it would be economically advantageous to exercise that choice, then it is a rational choice that makes an alternative performance. That's the law of Washington. But Holmes says that's true. That's exactly what Holmes said. He says that's what makes it work, that you always have, you can always make a rational choice. It's economically beneficial to me to breach and pay damages or it's economically beneficial to me to go forward. But that's not what happens here. And you know why that is? And the reason I say that, Your Honor, is because we're not, unfortunately, applying Justice Holmes. We are applying Washington law. And what Washington law says in Bentley is if it meets this rubric, it's alternative performance, it's not liquidated damages, and we don't go to that step. The two other factors aside from choice, rational choice. Oh, and by the way, let me back up for a minute when I talk about rational choice. That is exactly the reason why what Mr. Tico says is our position is untrue. We would not be here arguing this is alternative performance if it were a $10,000 payment or if it were a $1,000 payment because that would never be economically advantageous for the promisee to exercise that choice. And in that situation, you would analyze it under the rubric of liquidated damages, and you would say is that an unlawful penalty or not? I think you'd probably lose. But we are saying in this instance where the initial choice is a payment that would be one quarter what your total obligation is, that that is something that gives you an option that is free choice. Because remember, Your Honor, there is no obligation to offer this choice at all. Clearwater could just say you have a two-year contract. Your obligation is $720 or $888, as the case may be. You pay it. And what would happen if I breached? You're liable for those damages. What damages? The remaining obligation on your contract. Period?  You don't have to prove any damages. You know what's interesting, Your Honor? That is the damage. When you say you don't have to prove damages, that is the damage. Excuse me? That is the damage. That is what? The remaining, if they have promised me, I promise you I will pay you $30 a month for another 20 months, and they breach their obligation, they owe me $30 a month for 20 months. Now, they may argue that I have saved something by virtue of their breach, but that is their obligation as an affirmative defense in mitigation. I mean, that's civil law. We have that every day in lease agreements where tenants breach. We don't have to prove damage. We have to prove what the remaining obligation on the lease was, and then they get to prove some sort of mitigation or cost savings in response. So in this instance, Your Honor, we have given an option to these people that they would not have under Holmes' rubric of you get a choice between breaching and paying damages or honoring your contract. Let me, rather than spend the rest of the time talking about the Bentley rubric, because I think Bentley clearly is a case that favors Clearwater's position here, let me talk about what Mr. Tico says in terms of his responses or his explanations as to why this shouldn't be treated as an alternative performance clause. The first thing is he says, well, the first is that Mr. Tico says, well, free choice isn't the right rubric. Well, I've already addressed that. Free choice is indeed the first factor under Washington's test. Whether Justice Holmes would say that always applies or not, that's Washington law. The second thing Mr. Tico says is, well, this can't be an alternative performance clause because it doesn't contemplate a continued relationship between the parties. It contemplates a termination of the relationship. The reality is, however, that virtually every case that is cited by either party on this principle involves a payment that terminates the relationship. That's what happened in Bentley where the teacher had to pay back the salary that she collected during her sabbatical and the relationship was terminated. That's what happened in the Banks case in California cited by this court in Schneider and Hutchison, those two unpublished decisions, where there was a payment to terminate an agency relationship. You know, the problem is in this area, and the courts have wrestled with it, I'm sure, but Bentley is an example. In Bentley, there is a true choice in a sense. The school district says, we'll pay you a salary while you're not working for the next two years or whatever it is because you're off on your sabbatical doing whatever it is. And look, it's really easy. You can either pay us back what we paid you. That's not damages. You just pay us back what we gave you. Or you can come work for us for another two years. But you don't have to pay any damages. That's not the point. You just have to give back what we gave you. That's not damages. It's paying back what we gave you. Damages is just a word, Your Honor. Of course it is. The concept is, in that instance, though, that I received some payment and now I'm going to have to pay it back to you. In our case, $210 in the declining amount is never contemplated as damages. It is simply what the parties agreed would be an early out. An early out that didn't have to be provided. An early out that is obviously industry standard, as you can see from the fact that you're seeing recurring cases on this issue, particularly in the Internet service area. And so the fact that there is a termination of the relationship is something that is common to all of these cases. What's interesting to me is that even the dissenter in Schneider and Hutcherson, also by chance named Judge Fletcher, the dissenter in Hutcherson and Schneider recognized that an alternative performance provision could lead to termination of the relationship. In three times in Judge Fletcher's dissent, what he says, and I recognize this isn't binding, this is only persuasive, but what Judge Fletcher says is this. When the parties entered into the contract, it was clear that if the contract were terminated with five months or more remaining on the contract, the $200 fee would function as an alternative means of performance. In other words, during the time period when the fee pay, the ETF was less than the remaining contract obligation, Judge Fletcher says that would be a valid alternative performance provision. Significant about that, Your Honor, is not only the recognition that termination of the relationship can be part of the ETF or part of an alternative performance provision, but also because in this case there is no plaintiff, no plaintiff who alleges that they paid an ETF or were charged an ETF in excess of the remaining obligation on their contract. So even if one adopts the reasoning- Counsel, let's suppose that you had somebody who had just three months and an economically rational person looking at the alternative between paying an ETF and making the remaining payments would make the remaining payments, okay? Understood. And that the customer is so dissatisfied they decided not to pay anything. Yes. And Clearwire, I take it, has turned some of these things over to collection agencies? I gather, yes. When they turn it over, are they asking for the $60 to $20 a month? Or are they asking for the $220 ETF? Based upon what's alleged in the complaint, which is all that's in the record, it appears that it's the ETF based upon what's in the complaint. Now, again- If that were to be litigated, if somebody were to litigate that question, so you decided to somehow get into court over that question, would that be upheld by Washington courts? When you say that question, let me make sure I understand the question. The question that I understand that you're asking is if there were so little time left on the service agreement, people got fed up, they- That the monthly payment is less than the ETF. But Clearwire imposes the ETF anyway. Well, that's what I was asking, which of those two things is Clearwire going to impose on them? Are they going to request the remaining money, the money remaining on the contract, or are they going to request the ETF? And I had understood from Mr. Tico that, in fact, Clearwater has turned us over to collection agencies requesting the ETF. Actually, Mr. Tico didn't say quite that, because the two people that make reference to that, that is saying that they were turned over to collection, were people who terminated and had the ETF imposed before the ETF was an amount greater than the remaining service obligation. Okay? So what you're positing is a new fact pattern, not present in any of the 12, and I honestly don't know the answer to that question. I don't know what Clearwire would do in that situation, whether they would impose the lesser of or the ETF. I would also say that, if Your Honor's further question is, if we assume that they would impose an ETF greater than the remaining service obligation, I think there is a strong argument to be made that Washington law would uphold it, just as this court in Hutchison upheld an ETF in exactly that scenario, where, to be honest with you, Your Honor, it would have been a tough fact pattern for me. In that case, the Hutchisons had paid all of their services. It did seem like a pretty tough fact pattern. And this court said, well, that's an ETF, that's an appropriate alternative performance. Why? Because we measure the validity of the ETF at the time of contracting, not at the time of the exercise of the option. And that is consistent with what Washington law says. If one reads Bentley, Bentley says exactly that. Bentley talks about looking at this at the time of contracting. And at the time of contracting, if you're thinking about, if you're somebody entering into this contract, and you're thinking about, would I rather have a contract that says, I have a fixed obligation of $720 over the next two years, where $888, as the case may be, or would I rather have a contract that has that fixed obligation, but allows me an out? In case, for example, I move to Minot, North Dakota, where there is no clear wire service, I can, as part of my moving cost, pay $200 and I'm free. I think it's clear as a bell that as between those two contracts, this is the one you want, because this is the one that gives you flexibility you would not otherwise have. Precisely the point that's made by the court in Bentley, flexibility is the hallmark of these alternative performance provisions, and that is precisely what this one grants. I see that I'm now out of my time. We ask that this Court affirm Judge Peckman in all respects. Thank you, Your Honor. Thank you, Mr. Rumage. Mr. Tico? Very briefly, if the, if clear wire sued to collect the ETF at a point in time when it was greater than the sum of the remaining monthly payments, that would not be consistent with Washington law. That wasn't the issue in Hutchinson. Hutchinson didn't consider the measure of damages, and under the law in Washington and everywhere else in the country, clear wire would only be entitled to the cheaper of the two performances, which in Hutchinson would have been zero. So the claim that Bentley is the definitive statement of Washington law, I think, is a little bit overblown. Bentley was a very different factual circumstance. It's a very confusing case. I read it about 20 times and still not sure exactly what it means, of an intermediate court in Washington. The reality is there are not cases under Washington law that are on all fours with Rs on the facts, but Chandler is the definitive statement from the Washington Supreme Court of what the law should be as a matter of principle, and we would urge the Court under that decision to reverse. Thank you very much. Thank you. We thank both counsel for an enlightening argument. It's an interesting issue, and I think it was well-argued on both sides. With that, the Court has completed the calendar, and we are in recess until tomorrow.
judges: Fletcher B. , Fernandez, Bybee